**SO ORDERED.**

**SIGNED September 13, 2005.**



---
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE:

JACQUELINE T.S. MERRITT                         CASE NO. 05-51032

    Debtor                                        Chapter 13

---
MEMORANDUM RULING
---

Presently before the court is the Motion for Relief ("Motion") from Stay filed by CARLTON PENN, the holder of a note secured by real property owned by the JACQUELINE T.S. MERRITT, the above-named Debtor. A final hearing on the Motion was held on September 12, 2005. After hearing the testimony of the witnesses, the matter was taken under advisement.

In December 1999, Mr. Penn sold a lot and building ("Property") in Breaux Bridge, Louisiana, to the Debtor for $45,000. The building was ultimately refurbished and opened as a

restaurant which the Debtor still operates. She paid $10,000 down and executed a promissory note for the balance.

For purposes of the hearing on the Motion, the court found that the value of the Property to be $38,500. Further, a stipulation was entered that the balance of the promissory note according to the Debtor's calculations was $25,582.58, and $40,903.89, according to Mr. Penn's calculations.

The discrepancy arises out of two cash payments claimed to have been made by the Debtor, namely $8,000 on August 31, 2000, and $3,000 on April 5, 2002. The Debtor testified that she made the payments in cash at Mr. Penn's request. Mr. Penn denies having received such payments.

The Debtor testified that Mr. Penn told her he needed money and asked for a larger payment. She also stated that she was selling insurance, had extra money that she could apply to the note, and wanted to pay him off as soon as possible.

Florence Green, the Debtor's daughter, was called as a witness to corroborate the Debtor's testimony. She testified that her mother gave her a check for $8,000, made payable to "Cash" and instructed her to go across the street and cash the check. She did so, being required to endorse the check. She testified that the bank employee placed $8,000 in large bills in an envelope. Ms. Green returned to the restaurant and placed the envelope in the

2

cash register. Although she did not specifically recall giving that particular envelope to Mr. Penn, Ms. Green testified that he did come to the restaurant on several occasions to pick up the note payment. The Debtor, however, testified that the envelope was given to Mr. Penn, although she did not count the money in the envelope after her daughter returned from the bank.

The Debtor's scenario regarding the $3,000 check is basically the same, although Ms. Green was not involved in cashing the check.

Mr. Penn's wife of 40 years, Geraldine Penn, testified on rebuttal. She also denied that her husband received the large cash payments, sounding very confident that she would have known if such large cash payments were received.

Weighing the credibility of the witness, the court does not believe that the Debtor has satisfactorily proved the existence of such cash payments. The lack of credibility is based upon the following observations:

- During the life of the loan, the Debtor made a total of 25 payments. All payments, except for the two in dispute, were made by either check or money order. There were no other cash payments.

- The Debtor did not get a receipt for the disputed payments. The Debtor, however, has been employed in insurance and restaurant businesses for many years. The court is at a loss why no receipt was obtained, even acknowledging that the Debtor was without the benefit of sophisticated business acumen.

3

- The Debtor was also questioned regarding her tax returns. She admitted that she did not deduct the interest attributed to payments made to Mr. Penn. She didn't even give this information to her CPA.

- This is the Debtor's second case. In the first filing, she did not even list Mr. Penn as a creditor. The only reason for failing to do so was because she wanted to pay him. Mr. Penn learned of the filing, however, and did participate in that case. In the instant case, the schedules reflect that the Debtor owed Mr. Penn the sum of $ 34,472.94, a far cry from what she now claims he is owed. When questioned about this, her answer was that the attorney made her put the higher number in. The schedules, however, are the Debtor's declaration under oath that Mr. Penn was owed in excess of $34,000 on the date of filing. This judicial admission cannot be overturned by such flimsy evidence as that adduced on the trial of this matter.

For the foregoing reasons, the court fixes the claim of Mr. Penn as of April 19, 2005, at $40,903.89, exclusive of attorney fees and court costs incurred in attempts to collect on the promissory note. As the value of the collateral was found to be $38,500, the Debtor has no equity therein. The issue of whether the property was necessary for a successful reorganization was pretermitted to the hearing on confirmation, now set for September

4

21, 2005. Accordingly, the hearing on the Motion is continued to that date for final resolution.

**IT IS SO ORDERED.**

###